UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
MAYRA CROWELL,

                                    Plaintiff,

        -v-                                         3:08-CV-1009

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                            OF COUNSEL:

OLINSKY LAW GROUP                       HOWARD D. OLINSKY, ESQ.
Attorneys for Plaintiff
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

OFFICE OF REGIONAL GENERAL COUNSEL      KIMBERLY L. SCHIRO, ESQ.
SOCIAL SECURITY ADMINISTRATION          MICHELLE L. CHRIST, ESQ.
REGION II
Attorneys for Defendant
26 Federal Plaza Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

        This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security

Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the

Commissioner of Social Security denying plaintiff Mayra Crowell's ("plaintiff" or "Crowell")

claim for Supplemental Security Income benefits ("SSI").  The parties have filed their briefs,

including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed her SSI application on June 28, 2006, claiming disability beginning on April 30, 2004.  Her application was initially denied on August 23, 2006.  On September 14, 2006, Crowell requested a hearing with an Administrative Law Judge ("ALJ"), and a hearing was held before an ALJ on November 19, 2007.  The ALJ rendered a decision on January 15, 2008, denying plaintiff's claim.  On January 18, 2008, plaintiff requested a review of the ALJ decision by the Appeals Council.  On July 28, 2008, the Appeals Council declined further review of the ALJ's decision.  Upon denial the plaintiff filed this civil action.  On November 25, 2008, the case was remanded to the Commissioner of Social Security for further proceedings in accordance with the sixth sentence of section 205(g) of the Social Security Act.  On June 2, 2009, the Appeals Council vacated and remanded the January 15, 2008, decision for a de novo hearing.  A new hearing was held on October 8, 2009, and a decision was rendered by the ALJ on December 18, 2009, denying plaintiff's claim.  On January 10, 2011, Crowell requested review of the ALJ decision and on February 8, 2011, the Appeals Council denied the request.  Upon denial by the Appeals Council, the ALJ's decision became the final decision of the Commissioner.  On February 25, 2011, plaintiff's request that this action be reopened was granted and the case was reopened.

### B. Facts

The facts stated in plaintiff's brief are adopted with any exceptions as noted.

**C.  Contentions**

Plaintiff contends that the ALJ's decision should be reversed and/or remanded because she:

1.  Erred by not finding plaintiff's chronic diarrhea status post cholecystectomy and depression, anxiety and Posttraumatic Stress Disorder ("PTSD") to be severe impairments;

2.  Failed to follow the Treating Physician Rule, which rendered her residual functional capacity ( "RFC") finding unsupported by substantial evidence;

3.  Failed to apply the appropriate legal standards in evaluating plaintiff's credibility; and

4.  Erred when she did not consult a vocational expert.

**III.  STANDARDS**

**A.  Standard of Review**

The scope of a court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied.  Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which

detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)).  If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  Id.

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148.  "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available.  42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that there is new, material evidence "'and that there is good cause for the failure to incorporate such evidence into the record'" at the administrative hearing.  Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643-44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980)).  Remand may also be appropriate if the Commissioner "misapplies the law or failed to provide a fair hearing." Id. at 644.  However, where the underlying administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings. Id. (reversing and remanding solely for calculation of benefits, subject to determination by the

district court of any motion by the agency to remand to consider new evidence); Parker, 626 F.2d at 235 (reversing and remanding solely for calculation and payment of benefits); Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams, 859 F.2d at 261 (same).

### B.  Disability Determination–The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity he is not disabled and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged is substantial gainful employment, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform

basic work activities.  Id. §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from a severe impairment, then step three requires that the ALJ determine whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations.  Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).

If the opinion of a treating physician is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record'" it is given significant weight.  Poupore, 566 F.3d at 307 (quoting 20 C.F.R. § 404.1527(d)(2)).  However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight.  Id.

The burden of proof with regard to the first four steps is on the claimant.  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and final step.  Perez, 77 F.3d at 46.  This step requires the agency to examine whether the claimant can do any type of work.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The regulations provide that factors such as a claimant's age, education, and previous work experience should be evaluated to determine whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary.  See Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404,

Subpt. P, App. 2).  "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity."  Poupore, 566 F.3d at 306.

A claimant may seek review of an adverse decision by the ALJ from the Appeals Council.  Perez, 77 F.3d at 44.  If review is granted, the decision of the Appeals Council is the final decision of the Commissioner.  Id.  If review is denied, then the final decision is that of the ALJ.  Id.  The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

## IV.  DISCUSSION

At step one of the evaluation process, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since June 28, 2006, her application date.  R. at 311. At step two, the ALJ determined that the plaintiff's fibromyalgia and status post left knee arthroscopic lateral release with chondroplasty constituted severe impairments.  R. at 313. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal the requirements of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at 316.  At step four, the ALJ found plaintiff had no past relevant work experience but has a RFC which is consistent with the full range of sedentary work as defined in 20 C.F.R. 416.967(a).  R. at 318–19.  At step five, the ALJ determined that, considering Crowell's age, education, work experience, and RFC, a finding of not disabled was directed by the Medical-Vocational Rule 201.27.  R. at 319–20.

The plaintiff alleges that the ALJ improperly considered her impairments because there was substantial evidence showing the plaintiff's diarrhea status post cholecystectomy, depression, anxiety and PTSD caused severe functional limitations.  The plaintiff further alleges that the ALJ erred in determining the plaintiff's RFC and disability status by failing to

follow the treating physician rule, applying the incorrect legal standard to evaluate Crowell's credibility, and by not consulting a vocational expert.  The defendant claims, however, that the ALJ properly determined the plaintiff's severe impairments based on the evidence in the medical records which supports the determination that only plaintiff's fibromyalgia and status post left knee arthroscopic lateral release with chondroplasty were severe and that plaintiff did not qualify as disabled.

### A.  Step 2 – Severe Impairments

At step two, the ALJ determined that although the plaintiff's fibromyalgia and status post left knee arthroscopic lateral release with chondroplasty constituted severe impairments, her diarrhea status post cholecystectomy, depression, anxiety, and PTSD were not severe impairments as described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at 313–16. Plaintiff contests the ALJ's determination, arguing that there was substantial evidence in the record indicating that her diarrhea, depression, anxiety, and PTSD caused more than minimal functional limitations.

Severe impairments are those impairments that, either singly or in combination, cause more than minimal functional limitation.  See 20 C.F.R. §§ 404.1521(a), 416.92(a). When analyzing the severity of the impairments, all impairments must be considered in their cumulative effect, as opposed to assessing the contribution of each impairment separately. See 42 U.S.C. § 423(d); Social Security Ruling ("S.S.R.") 85-28, 1985 WL 56856, at *3; Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995) (stating that under the Commissioner's own policy, step two should only be used as a de minimis screening device to eliminate frivolous claims).  An impairment is not severe if it does not significantly limit a claimant's physical or mental capacity to perform basic work activities.  20 C.F.R. § 416.921(a); see

Bowen v. Yuckert, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). Social Security Ruling 85-28 also states that "[a]n impairment is not severe if it has no more than a minimal effect on an individual's . . . ability(ies) to do basic work activities." 1985 WL 56856, at *3.

In her analysis, the ALJ determined that plaintiff's diarrhea did not constitute a severe impairment based on the medical evidence. The medical record indicates that on several doctor visits, plaintiff did state that she had diarrhea often, but did not take medications for it. See, e.g., R. at 182, 216, 272, 396, 484–85, 491. In none of the medical records does plaintiff complain to her doctors that her diarrhea is severe or limits her abilities. Plaintiff also denied any side effects such as nausea, vomiting, or dairy intolerance. An office visit note from May 10, 2005, did not note that the diarrhea was severe, but suggested that plaintiff take one tablespoon of Metamucil per day to lessen the diarrhea symptoms. R. at 216. However, plaintiff is not on any current medications to treat her diarrhea. R. at 491. While the ALJ should have considered whether plaintiff did not buy her medication due to financial constraints, substantial evidence supports the ALJ's determination that it is not a severe impairment and only caused minimal effects on her ability to perform basic work activities.

In her determination, the ALJ also noted that no abnormalities with the claimant's mental functioning was reported. The ALJ determined that plaintiff's psychological impairments were not severe based on lack of evidence in the record of her depression, anxiety, or PTSD affecting her ability to work. Crowell was prescribed anti-depressants through her primary care providers, and no other mental health notes or counseling reports were on the record. R. at 176, 216, 218–19, 314. Plaintiff requested that her depression medication dosage be reduced because her symptoms were under control. R. at 395.

Plaintiff's medical examination with her treating physician noted that she has no evidence of any mental limitations and that she appeared stable on her medication.  The doctor noted specifically that plaintiff was able to understand, remember, follow instruction, focus, and make decisions without limitations.  R. at 165.

As it is supported by substantial evidence in the record, the ALJ's determination that plaintiff's diarrhea, depression, anxiety, and PTSD are not severe impairments is proper.

## B.  Step Five–Residual Functional Capacity

At step five of the evaluation process, the ALJ found plaintiff had the RFC to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for at least 2 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday, which is consistent with the full range of sedentary work as defined in 20 C.F.R.  416.967(a). See R. at 316.  Based on plaintiff's RFC, the ALJ determined that plaintiff was not disabled because she could perform work that exists in the national economy in significant numbers. See R. 319.  Plaintiff contends that, in making the determination that she is able to perform sedentary work the ALJ failed to give controlling weight to the opinions of her treating physician, Dr. Liepke; failed to apply the appropriate legal standards in evaluating Crowell's credibility; and failed to consult a vocational expert.

## 1.  RFC Standard

RFC is what a claimant is capable of doing despite his or her impairments.  20 C.F.R. § 404.1545a.  The RFC is determined by considering all relevant evidence, consisting of, inter alia, physical abilities, symptoms including pain, and descriptions, including that of the claimant, of limitations which go beyond symptoms.  § 404.1545.  Age, education, past work experience, and transferability of skills are vocational factors to be considered.

Physical abilities are determined by evaluation of exertional and nonexertional limitations in performing a certain category of work activity on a regular and continuing basis. Id.; see also §§ 404.1567, 404.1569a.

Thus, to determine whether a claimant can do a certain category of work, the ALJ must determine plaintiff's strength limitations, or exertional capacity, which includes the ability to stand, sit, walk, carry, lift, push and pull. § 404.1659(a). Nonexertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stopping, climbing, crawling, or crouching." § 404.1569a(c)(vi). "An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations." Cornell v. Astrue, 764 F. Supp. 2d 381, 404 (N.D.N.Y. 2010) (citations omitted). When assessing RFC, the ALJ's findings "must specify those functions plaintiff is capable of performing; conclusory statements" regarding plaintiff's capacities are not sufficient. Id.; see Ferraris, 728 F.2d at 587-88. The RFC is then used to determine particular types of work a claimant may be able to perform.

If the claimant can do work that exists in the national economy a finding of not disabled will be made. § 404.1566(b). However, if a claimant can do work that does not exist in the national economy, a finding of disability will be made. Id. Jobs in the national economy are classified by their physical exertion requirements as "sedentary," "light," "medium," "heavy," and "very heavy." § 404.1567. Sedentary work requires the ability to lift no more than ten pounds, to sit for extended periods of time, and to walk and stand occasionally. § 404.2567(a). Light work requires the ability to lift no more than twenty pounds, with lifting or carrying up to 10-pound objects frequently. § 404.1567(b). A job falls into the light category "when it requires a good deal of walking or standing, or when it

involves sitting most of the time with some pushing or pulling of arm or leg controls," although the weight lifted is small. Id. Furthermore, an individual who can do light work is considered able to do sedentary work, "unless there are additional limiting factors such as . . . inability to sit for long periods of time." Id. "Work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." § 404.1566(a). However, "[i]solated jobs that exist only in limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered" to exist in the national economy. § 404.1566(b).

### 2.  **Treating Physician Rule**

Plaintiff contends that the ALJ did not apply the appropriate legal standard and improperly rejected the opinion of her treating physician, Dr. Liepke. Plaintiff argues that Dr. Liepke's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record. She further contends that the ALJ made a clear error by failing to recontact Dr. Liepke for clarification if she believed the opinions were incomplete or inconsistent. The defendant contends that the ALJ properly gave limited weight to Dr. Liepke's opinion because it was inconsistent with other evidence of record and due to the short length of the treating relationship.

 The opinion of a treating physician is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20. C.F.R. § 416.927(d)(2); Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). Furthermore, the ALJ must consider various factors in determining the weight given to treating physicians' opinions including the length of the treatment relationship, the frequency of examination by the treating physician for the

condition in question, the specialization of the physician, the supportability and consistency of the opinion with the record as a whole, and any other relevant factors. § 404.1527(d)(2)-(6); Burgess, 537 F.3d at 129.  An ALJ is entitled to discount a treating physician's assessment that is "'premised to a large extent on plaintiff's own account of his limitations.'"  Williams ex rel. v. Barnhart, 314 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (quoting Morgan v. Comm'r of the Soc.Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999)); Stroud v. Astrue, No. 09-CV-0357, 2010 WL 2671784, at *6 (W.D.N.Y. July 1, 2010).  Failure to follow this standard is a failure to apply the proper legal standard and is grounds for reversal.  See Johnson, 817 F.2d at 986–87.

Dr. Liepke opined that Crowell had limitations that restricted her to significantly less than full range sedentary work.  He indicated that plaintiff was capable of low stress jobs, R. at 278, but had limitations in her ability to sit or stand for more than two hours in an eight hour work day and in her ability to lift objects ten pounds or more.  R. at 278–80.  He also opined that plaintiff had significant limitations in doing repetitive reaching, handling, or fingering.  R. at 280.  Dr. Liepke treated Crowell from July 12, 2007, to September 18, 2007, only two months before giving this medical opinion.  Furthermore, Dr. Liepke noted in the report that he had only seen the patient for a few months when answering whether or not Crowell's condition existed and persisted since 2004.  R. at 281.  Dr. Liepke also checked off in the Medical Source Statement he made that claimant had a "history of multiple physical symptoms (for which there are no organic findings)."  R. at 284.  The ALJ properly gave limited weight to Dr. Liepke's opinion due to the short length of treating relationship and because his opinion was inconsistent with other evidence of the record.

Crowell's medical records from her long-term treating physician, Dr. Lozah, are substantially different than the findings of Dr. Liepke.  In treatment notes from September 2005 through March 2006 Dr. Lozah noted that claimant's depression was stable on her medication, she experienced hot flashes as a side effect of that medication which should resolve with time, and she had low back pain.  R. at 167–71.  In a disability examination report dated May 18, 2006, Dr. Lozah found that Crowell had only moderate limitations in walking, standing, lifting, carrying, pushing, bending and climbing stairs.  R. at 165. Dr. Lozah referred her for orthopedic and neurological consults, in February and March 2006, respectively.  R. at 159–63.  The orthopedist saw claimant for a right elbow injury.  R. at 159. His examination and radiographs showed she was neurovascularly intact except for the injured elbow, and no degenerative changes of the elbow were revealed.  R. at 159.  The neurologist found 5/5 strength in all muscle groups, normal lower extremity strength and tone, and "normal reflexes in biceps, triceps, knees and ankles with exquisitely intact pinprick response throughout."  R. at 162.  The laboratory tests he conducted revealed a normal lumbar spine and mild degeneration with a slight protrusion in the cervical spine.  R. at 163. Thus, the opinions of treating physician Dr. Lozah are supported by and consistent with the medical record.  In contrast, the opinions of Dr. Liepke appear to be based primarily on Crowell's subjective complaints.  Due to the short treating relationship and the inconsistencies of Dr. Liepke's findings with other medical records, the ALJ appropriately gave Dr. Liepke's opinion limited weight in the analysis of plaintiff's impairments.

In addition, Crowell presented to her most recent treating physician (in the record), from December 2008 to October 2009, Dr. Levenstein, with fibromyalgia, knee and back

pain, and depression.  R. at 391-97.  Dr. Levenstein found her to be comfortable, alert, and oriented.  R. at 395.  He also noted that her gait and strength were normal.  R. at 395.

The ALJ had no duty to recontact Dr. Liepke because there were no gaps or deficiencies in the evidence that would require it.  The ALJ obtained all of Crowell's treatment notes, and made her determination based on the evidence in the record.  Although the ALJ has a duty to fill any "clear gaps" in the administrative record, "where there are no obvious gaps . . . and where the ALJ already possesses a 'complete medical history,'" the ALJ is under no obligation to seek additional information.  Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citations omitted); Stroud, 2010 WL 2671785, at *6 (citing 20 C.F.R. § 404.1527(c) for the proposition that the "ALJ is required to obtain additional evidence only if he or she cannot decide whether a claimant is disabled based on the existing evidence").

Thus, the ALJ followed the appropriate legal standard and was correct in giving limited weight to Dr. Liepke's opinion.  Further, there was no error in the ALJ failing to recontact Dr. Liepke.

### 3. **Evaluation of Plaintiff's Credibility**

Plaintiff argues that the objective medical evidence in the record supports her statements concerning the intensity, persistence, and limiting effects of her symptoms. Plaintiff further argues that the ALJ failed to apply the appropriate legal standard by failing to discuss all of the required factors set forth in the regulations such as side effects of medications, and other treatment, and all of Crowell's symptoms.  Defendant argues that the ALJ properly concluded that plaintiff's complaints were not credible because they were not consistent with the medical evidence.

"The 'ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.'" Rockwood v. Astrue, 614 F. Supp. 2d. 252, 270 (N.D.N.Y. 2009) (quoting Borush v. Astrue, No. 3:05-CV-361, 2008 WL 4186510, at *12 (N.D.N.Y. Sept. 10, 2008)).  In the first step of the analysis, "the ALJ must determine whether the claimant has medically determinable impairments, 'which would be expected to produce the pain or other symptoms alleged.'" Id. at 271 (quoting 20 C.F.R. § 404.1529(a); citing S.S.R. 96–7p, 1996 WL 374186, at *2.  "'This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms.'"  Id. (quoting McCarty v. Astrue, No. 5:05-CV-953, 2008 WL 3884357, at *8 (N.D.N.Y. Aug. 18, 2008) (citing S.S.R. 96–7, 1996 WL 374186)).

After an ALJ has found an underlying medically determinable impairment that could reasonably be expected to produce a claimant's pain and other symptoms, she is required to "evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work."  Id. (citing S.S.R. 96–7p, 1996 WL 374186, at *2;  20.C.F.R. § 404.1529(c).  The evaluation regulations require that the following factors be considered: (1) "daily activities; (2) the location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by claimant to relieve symptoms; and (7) any other factors concerning claimant's  functional limitations and restrictions due to symptoms."  Id. (citing 20 C.F.R. § 416.929(c)(3)(i)-(vii)).

"Pain and other limiting symptoms are important elements in disability claims, and such evidence must be thoroughly considered. " Id. at 270 (citing Ber v. Celebrezze, 332

F.2d 293 (2d Cir. 1964)).  "'[A] claimant's subjective evidence of pain is entitled to great

weight where . . . it is supported by objective medical evidence.'"  Id. (quoting Simmons v.

U.S. R.R. Retirement Bd., 982 F. 2d 49, 56 (2d Cir. 1992)).  "'[T]he ALJ is not obliged to

accept without question the credibility of such subjective evidence.  Id. (quoting Marcus v.

Califano, 615 F.2d 23, 27 (2d Cir. 1979)).  Where an ALJ relies upon inaccurate facts to call

claimant's credibility into question, her determination is not supported by substantial

evidence. Horan v. Astrue, 350 Fed. Appx. 483, 484 (2d Cir. 2009) (unpublished summary

order); 20 C.F.R. § 416.929(c)(4).

        The ALJ found that "the claimant's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms; however, the claimant's

statements concerning the intensity, persistence and limiting effects of these symptoms are

not credible to the extent they are inconsistent with her activities of daily living, the objective

medical evidence, and the opinion evidence of record." R. at 317.  Thus, the ALJ followed

the appropriate two-step legal standard in evaluating Crowell's symptoms.

        The issue then, is whether substantial evidence supports the ALJ's determination

that claimant's description of her symptoms was less than credible, in evaluating the extent to

which they limit her capacity to work.  The ALJ considered plaintiff's physical symptoms and

her psychologically-based symptoms separately.

        With respect to plaintiff's physical symptoms, the ALJ found that the intensity,

duration and frequency of plaintiff's symptoms would not preclude work activities.  R. at 317.

In her credibility assessment, the ALJ determined that plaintiff's daily activities "reflect a

higher level of functioning than she has alleged," noting that at an examination in 2006

plaintiff "reported that she was able to attend to her personal needs, cook, clean, do laundry,

manage money, drive, watch television, sew, use the Internet, play video games, paint, and work on puzzles." R. at 317 (citing Exs. 7F, 8F (R. at 176–188)). At her 2009 hearing Crowell testified that she does the dishes with a dishwasher, attempts to do laundry (but sometimes requires help from her husband), cooks meals, and vacuums. R. at 498-500; see also R. at 480 (plaintiff testified she drove 2-1/2 hours to the hearing). The ALJ also noted that plaintiff had several treatment notes from physicians which indicated that her examinations were normal, that she was doing well and that her condition was improving. R. at 317–18.

In addition to the evidence of plaintiff's daily activities, other substantial evidence supports the ALJ's conclusion regarding the plaintiff's credibility. Plaintiff claims to need a cane to ambulate. However, nothing in the record indicates that the plaintiff needs a cane to ambulate except for her own subjective complaints of pain. Dr. Liepke stated that plaintiff did not need a cane or other assistive device to engage in occasional standing and walking. R. at 280. The evidence in the record demonstrates that plaintiff ambulates normally, is able to walk with a normal gait and can walk on her heels and toes. R. at 183-84, 395, 459.

With respect to plaintiff's psychological impairments, the ALJ concluded that the intensity, duration, and frequency of plaintiff's symptoms did not render her unable to perform basic work-related functions. The ALJ stated that "there are no mental health treatment notes or counseling reports to support the claimant's allegations that her psychologically based symptoms affect her ability to work." R. at 318. In making her determination about plaintiff's credibility, the ALJ also noted that Crowell reported that her depression was controlled through current medication, and she wanted to reduce the dosage. R. at 318; see

- 18 -

R. at 395.  Additionally, the ALJ correctly considered in her determination that the claimant had not sought psychiatric treatment since 1998.

While the plaintiff correctly points out that one does not need to be an invalid to be found disabled under the Social Security Act, the medical information in the record as a whole provides substantial evidence in support of the ALJ's determination that plaintiff's complaints were not entirely credible.  Based on the substantial evidence of the record, the ALJ used the correct legal standard in determining that the weight of plaintiff's credibility should be limited.

### 4. ALJ's Determination of Plaintiff's RFC

After evaluating the record evidence, the ALJ determined that the transferability of job skills was not an issue because Crowell did not have past relevant work, but that she maintained the RFC to perform sedentary work.  In reaching this determination, the ALJ determined plaintiff's exertional capacity and her nonexertional limitations.

The ALJ considered medical reports from physicians, Dr. Levenstein, Dr. Datta, Dr. Lozah, Dr. Liepke, and Ronald Baker, M.D., the plaintiff's orthopedic surgeon, when determining the plaintiff's RFC.  The ALJ remarked that treatment notes by Dr. Levenstein indicated that plaintiff's condition was generally normal, revealing that she was comfortable, alert, oriented, and had normal gait and strength.  See R. at 391–996.  Treatment notes from treating physician Dr. Lozah and medical consultant Dr. Datta indicated that although plaintiff possessed moderate physical limitations impacting her ability to walk, stand, lift, carry push, pull, bend, and climb, she has no limitations for sitting, seeing, hearing, speaking, or using her hands or upper extremities for fine and gross motor activities.  See R. at 165, 186.

In March 2006 Dr. Lozah, plaintiff's treating physician from September 2005 to December 2006, opined that Crowell had moderate limitations in walking, standing, pushing, pulling, bending, and climbing due to low back pain.  R. at 165.  However, he also found on physical examination that her gait and station, as well as her neck and spine, were normal. R. at 257.

In August 2006 a State Agency disability analyst concluded that Crowell could lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for at least 2 hours in an 8-hour work day, and sit for about 6 hours in an 8-hour work day.  R. at 189–94.  However, the analyst based this on a review of the records and not an examination.

Dr. Liepke, whose opinion was not entitled to controlling weight, opined in 2007 that plaintiff could lift and/or carry 20 pounds or less rarely, stand and/or walk for less than two hours, and sit for less than two hours in an 8-hour workday with normal breaks.  R. at 278.  In the same medical source statement Dr. Liepke inconsistently opined that Crowell could sit more than two hours and could stand only for twenty minutes without having to sit down or walk around.  See R. at 479.  Further, Dr. Liepke opined that she could twist, bend, crouch, and climb only rarely.  R. at  280.

Physical therapy notes of February 7, 2008, in relation to a knee injury, indicated that Crowell was doing well and her condition was improving.  R. at 421.  However, physical therapy was terminated when plaintiff failed to make another appointment.  R. at 421.  She had arthroscopic surgery on her knee in March 2008.  R. at 466–67.  Furthermore, after plaintiff's knee surgery, her orthopedic surgeon, Ronald Baker M.D., indicated in his treatment notes that claimant was doing surprisingly well.  R. at 458.

At an office visit in April 2009, Dr. Levenstein noted that plaintiff's gait and strength were normal.  R. at 395.  He also noted that she "appear[ed] comfortable, alert, oriented [and] in no apparent distress," although she complained about muscle pain.  R. at 395.

The foregoing medical evidence supports the ALJ's determination that Crowell "retain[ed] the ability to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for at least 2 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday."  R. at 318.  Having determined plaintiff's exertional capacity, the ALJ also considered her nonexertional limitations.

The medical records consistently reflect that Crowell suffers from anxiety and depression.  However, her depression was controlled by her medication.  See, e.g., R. at 249.  In fact, the depression was well-enough controlled that plaintiff wanted to reduce her dosage.  See R. at 395.  Dr. Lozah opined that plaintiff had no mental functioning limitations. R. at 165.  Dr. Hartman, a consultant, performed a psychiatric evaluation in August 2006.  He found that she could follow and understand simple instructions, and could learn new tasks. R. at 179.  While he opined that she had "a fair ability to maintain a regular schedule," she did have mild attention and concentration problems as well as "mild to moderate problems dealing appropriately with the normal stressors of life."  R. at 179.  Plaintiff testified that she was not getting mental health treatment for anxiety.  R. at 495.  However, she went to counseling in college and a psychologist once.  R. at 496–97.

Based on plaintiff's age of 32, college education, lack of past relevant work, and her RFC for the full range of sedentary work, the ALJ determined that a finding of not disabled was directed by Medical-Vocational Rule 201.27.

**5.  Application of Medical-Vocational Guidelines without Vocational Expert**

The plaintiff contends that the ALJ should have obtained a vocational expert because there is evidence that Crowell suffers significant non-exertional limitations due to her diagnosis of anxiety, depression, and PTSD.  The defendants argue that the ALJ properly relied on the Medical-Vocational Guidelines ("grids") to determine plaintiff was not disabled.

Where nonexertional limitations alone (without exertional  limitations) limit a claimant's range of work, "a vocational expert is required to identify specific jobs within claimant's abilities," and the grids are not applicable.  See Polny v. Bowen, 864 F.2d 661, 663–64 (9th Cir. 1988).  However, the grids are applicable where claimant has both exertional and nonexertional limitations.  Id. at 663.  Application of the grids alone must be evaluated by the ALJ on a case-by-case basis taking into consideration whether a claimant's abilities are significantly limited by nonexertional impairments.  Bapp v. Brown, 802 F.2d 601, 605 (2d Cir. 1986).  If there is a significant diminution of the claimant's abilities, that is, the nonexertional limitation "so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity," the ALJ should obtain the testimony of a vocational expert.  Id. at 606.

On the other hand, if the nonexertional limitations result in only negligible impact on capacity to work, the ALJ need not obtain a vocational expert.  Id. at 605–06; Baszto v. Astrue, 700 F. Supp. 2d 242, 251–52 (N.D.N.Y. 2010) (finding that the "ALJ properly relied on the Grids when she made her determination that a significant number of jobs existed in the national and local economy that Plaintiff could perform," despite the presence of some nonexertional limitation).  The question of diminution of work capacity can be determined by

evaluating whether "the basic mental demands of competitive, remunerative, and unskilled work" as characterized by "the ability, on a sustained basis, to 'understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'" Sipe v. Astrue, __ F. Supp. 2d __, No. 90-CV-1353, 2012 WL 2571268, at *7–8 (N.D.N.Y. July 3, 2012) (quoting S.S.R. 85-15).

The record indicates that Crowell's anxiety, depression, and PTSD were not severe and did not significantly limit her physical or mental ability to engage in basic work activities. Plaintiff's depression was sufficiently under control that she wished to reduce the dosage of her medication. R. at 395. Further, she was not receiving mental health treatment. R. at 495. Dr. Lozah opined that plaintiff's depression was stable and she had no mental functioning limitations. R. at 249, 165. The consulting psychiatrist Dr. Hartman found that while plaintiff would have a fair ability to maintain a schedule, she did have mild attention and concentration problems and difficulty dealing with life's stressors. R. at 179. A state disability psychiatrist concluded that Crowell had mild limitation in activities of daily living and maintaining social functioning and moderate limitation in concentration, persistence, or pace. R. at 205. However, these limitations did not cause more than a minimal limitation of ability to do basic work. See R. at 206.

Substantial evidence supports the ALJ's determination that no severe nonexertional limitations existed which prevented Crowell from performing the full range of sedentary work. She followed the correct legal standard and properly relied on the Medical-Vocational Guidelines, which directed a finding of not disabled, without the need to call a vocational expert.

## V. **CONCLUSION**

A review of the entire record in this case reveals that the ALJ followed the proper legal standards and her findings are supported by substantial evidence.

Accordingly, it is

ORDERED that

1. The Commissioner's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's decision denying plaintiff disability benefits is AFFIRMED; and

3. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  August 29, 2012
        Utica, New York.